IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING** |
| | ) | **MOTION TO SUPPRESS** |
| vs. | ) | |
| | ) | 2:07-cr-16 |
| Corey Lorent Molsbarger, | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Corey Lorent Molsbarger's Motion to Suppress (Doc. #17). The United States filed a brief in opposition to Molsbarger's Motion (Doc. #19). An evidentiary hearing was held on June 7, 2007.

## FACTS

On January 5, 2006, Molsbarger paid Corey Olson to rent a room, Room 101, at the Ramada Inn in Grand Forks for one night. Molsbarger testified he prefers not to rent rooms in his own name, in order to avoid warrantless probation searches. Olson was a friend of Molsbarger's and had rented rooms for Molsbarger in the past for this same reason.

Molsbarger, possessing the only key for Room 101, first went to the room at approximately 8:30 or 9:00 p.m. He was at the room for some time before leaving with friends to go to a few clubs. Molsbarger returned to the room with his friends at approximately 1:30 or 2:00 a.m. on January 6, 2006. He testified he fell asleep shortly thereafter.

The Ramada Inn night auditor, James Stallmo, contacted the police just before 5:00 a.m., complaining of noise and "possible narcotics violations." He informed the police he had received several complaints about noise coming from Room 101 and had contacted the occupants at least

1

once about the disturbance.

Officers Jacobson, Moe, and Schauer responded to the call.  Stallmo reiterated his complaints, noting he had prior experience with law enforcement and suspected drug activity was taking place.  He stated he wanted the occupants evicted.

Stallmo and Officers Moe and Schauer went to the "front" hotel room door and Officer Jacobson stood at the poolside sliding door.  Through the front door, loud but muffled talking was audible to Officers Moe and Schauer.  They could make out words and phrases such as "runners," "mules," and "supplier from California," and interpreted the conversation as dealing with drug trafficking.  Officer Jacobson could hear only muffled voices through the patio door.

After Stallmo repeated his desire to have the occupants evicted, Officer Schauer knocked on the door and identified himself as hotel management.  A female answered the door, which she opened almost all the way.  No damage or contraband was visible from the doorway.  The woman said she did not know to whom the room was rented.  Officer Schauer informed her that the occupants were going to be evicted and requested consent to enter the room, which the female denied.  Officers Schauer and Moe entered the room, and Stallmo stayed in the hallway.  No contraband or damage to the hotel room was visible within the room.

When Officer Jacobson entered the room, he immediately recognized Molsbarger, for whom there were outstanding arrest warrants.  Molsbarger was lying on the bed, apparently asleep.  The outstanding warrants were verified, and Molsbarger was arrested.  The other four occupants of the room consented to pat-down searches, and the officers began a search incident to Molsbarger's arrest.  In the night stand next to the bed, officers found drug paraphernalia.  Approximately 3-4 feet from Molsbarger was an empty case of beer.  Under a cardboard divider in the box, officers found

2

methamphetamine, marijuana, and a digital scale.

Molsbarger was indicted by a federal grand jury for possession with intent to distribute methamphetamine, and his suppression motion followed.

### ANALYSIS

Molsbarger claims the warrantless entry into Room 101 violated his Fourth Amendment rights.  The first step in such an inquiry does not examine "standing," per se, but examines whether Molsbarger had a legitimate expectation of privacy.  United States v. Carter, 854 F.2d 1102, 1105 (8th Cir. 1988) (citing Rawlings v. Kentucky, 448 U.S. 98, 104 (1980)).  This inquiry is a two-step process involving two discrete questions: First, whether a defendant has exhibited an actual, or subjective expectation of privacy, and second, whether that expectation is one that society would recognize as "reasonable."  Smith v. Maryland, 442 U.S. 735, 740 (1979).

Molsbarger focuses primarily on the second prong of this test, arguing that his expectation of privacy was objectively reasonable.  The Eighth Circuit has held that "[t]he expectation of privacy associated with a person's home applies with equal force to a properly rented motel room during the rental period."  Carter, 854 F.2d at 1105 (citing United States v. Rambo, 789 F.2d 1289, 1295 (8th Cir. 1986).  Molsbarger has made a strong argument that he had an expectation of privacy that society would recognize as "reasonable."  Molsbarger paid for the room, and his belongings were contained therein.  See United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir. 2000).  Molsbarger had the renter's express permission to occupy the room and, in fact, held the only key to the room.  See United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995).  Finally, Molsbarger was present in the room, possibly sleeping, when the police arrived.  See Carter, 854 F.2d at 1105.  The Court is troubled that Molsbarger was not the registered occupant of the room, nor was that individual

present.  See United States v. Gordon, 168 F.3d 1222, 1226 (10th Cir. 1999) (holding that male defendant had no expectation of privacy for search of hotel room outside his presence, even though he had a key to the room and paid for the room, when it appeared he had never actually been in the room).  However, it is not likely such a formality would affect society's view of "reasonableness." Routinely, hotel rooms are rented by one person and used by others, such as a parent for a child going on a school trip, a single individual for a group of friends on vacation, or a husband or wife for the couple to use jointly.  To hold that only those persons whose names are on the registry have an expectation of privacy is contrary to societal norms.  Therefore, the Court concludes that Molsbarger's expectation of privacy was objectively reasonable.

As to Molsbarger's subjective expectation of privacy, however, the Court cannot so conclude.  Molsbarger did not act as though he sought privacy.  See Conway, 73 F.3d at 979.  He did not maintain control over the room, as he was apparently unconscious while others "partied" and came and went from the room.  Most importantly, he was aware he was subject to warrantless probationary searches.  This last fact puts Molsbarger in an untenable position: he must argue that he was a lawful occupant of Room 101 as to his expectation of privacy, simultaneously maintaining he was not the lawful occupant of Room 101 as to warrantless probationary searches.  Molsbarger knew he was subject to searches and had no subjective expectation of privacy.  Furthermore, the Court cannot support a policy that allows individuals on probation to avoid probationary searches but maintain their "expectation of privacy" simply by staying at hotels or residences in other persons' names.  Such a perverse position only encourages unlawful activity and provides an avenue for probationers to avoid compliance with court orders.

## DECISION

For the above reasons, Molsbarger's Motion to Suppress is **DENIED.**

**IT IS SO ORDERED.**

Dated this 17th day of July, 2007.

                                     /s/    Ralph R. Erickson
                                  Ralph R. Erickson, District Judge
                                  United States District Court